SENTENCIA
En esta ocasión, tenemos ante nuestra consideración un asunto que no presenta una controversia viva y latente que requiera nuestra atención. E.L.A. v. Aguayo, 80 D.P.R. 552 (1958). Los hechos y el derecho cambiaron durante el trá-mite apelativo. Por los fundamentos que expresamos a con-tinuación, desestimamos el pleito por académico.
*998 I
El 5 de marzo de 2009 el Sr. Pablo Crespo Claudio, director ejecutivo de la entonces Asociación de Empleados del Estado Libre Asociado (AEELA), remitió una carta a la Junta de Directores de esa entidad. El señor Crespo Claudio comunicó en esa carta su decisión de acogerse al retiro a finales de junio de 2009. A esos efectos, la carta esboza lo siguiente:
En agosto de 1997, fui honrado con el nombramiento de Director Ejecutivo.
He tratado de ofrecer lo mejor de mi ser en todas las posi-ciones que he ocupado. Después del tiempo transcurrido ha-ciendo lo que entiendo ha sido lo más correcto, me acogeré a los beneficios de jubilación; efectivo el 30 de junio.
Confío en haber prestado mis servicios con la mayor diligen-cia y en defensa de los intereses colectivos de los empleados y ex-empleados públicos. Apéndice, pág. 243.
Con posterioridad a esa carta, el señor Crespo Claudio envió otra comunicación escrita a la Junta de Directores en que indicó que deseaba continuar en el puesto de Director Ejecutivo, pero bajo un contrato de servicios profesionales. Por eso, unió a su carta una propuesta en que detalló todo lo relacionado al término, la compensación y la termina-ción de la relación contractual. Apéndice, págs. 244-250.
El 29 de abril de 2009, la Junta de Directores se reunió y evaluó ambas comunicaciones. Decidió aceptar la renun-cia del señor Crespo Claudio a la posición de Director Eje-cutivo y denegar su oferta para continuar en el cargo por contrato de servicios. Sin embargo, en reconocimiento a su experiencia, determinó ofrecerle un contrato de consultoría. Cónsono con lo anterior, la Junta de Directores envió al señor Crespo Claudio una propuesta de contrato junto con un memorando en que aceptaba su renuncia.
La Junta, a su vez, emitió el Acta Núm. 2241, 6-15, en que informó a todos los delegados la renuncia del señor Crespo Claudio por motivo de su jubilación, efectiva el 30 *999 de junio de 2009. Apéndice, pág. 262. Asimismo, para infor-mar lo acontecido circuló un memorando a la Asamblea en que informó lo mismo. Debido a lo anterior, el Presidente de la Asamblea, el Sr. Nery Cruz Reyes, le solicitó una reunión al Comité Ejecutivo de la Junta de Directores para discutir la dimisión del Director Ejecutivo. Apéndice, págs. 279-280.
Así las cosas, el 13 de mayo de 2009 el señor Crespo Claudio sometió una segunda propuesta de contrato de ser-vicios con la intención de modificar su primera oferta. Mientras tanto, ese mismo día la Comisión para Asuntos de la Junta y la Asamblea, adscrita a la Asamblea de De-legados, cursó una comunicación a la Junta de Directores para informarle los acuerdos alcanzados por la Comisión en relación con la renuncia del Director Ejecutivo. En sín-tesis, acordaron solicitarle al señor Crespo Claudio que “retir[ara] la renuncia”, a cambio de mantenerse en el cargo de Director Ejecutivo por un periodo de dos años o hasta que culminara el término de la Junta de Directores en funciones. Apéndice, pág. 297.
Al día siguiente, el señor Crespo Claudio le notificó por escrito a la Comisión su determinación de “posponer mis planes de jubilación y, por lo tanto, retirar mi renuncia”. Apéndice, pág. 298. Esa decisión se anunció a la Junta de Directores de forma simultánea. La Junta de Directores respondió que, como ya había aceptado la renuncia y el puesto en controversia se declaró vacante mediante las Ac-tas 6-15 y 8-15 de 29 de abril de 2009, atendería la solici-tud en su próxima reunión. El 1 de junio de 2009 se celebró la reunión. La Junta de Directores determinó ordenar al señor Crespo Claudio que “com [enzara] el período de vaca-ciones regulares al recibo de este Acuerdo, hasta la fecha de efectividad de [la] renuncia”. Apéndice, pág. 301.
Inconformes con el acuerdo de la Junta de Directores, la Asamblea de Delegados convocó una reunión extraordina-ria para discutir el asunto. Posteriormente, la Asamblea de *1000 Delegados ordenó a la Junta de Directores que, de forma inmediata,
... [a]cept[ara] el retiro de la renuncia del Director Ejecutivo y mantenga al Sr. Pablo Crespo Claudio como Director Ejecu-tivo, bajo las mismas condiciones de trabajo existentes previo a su renuncia por un término de dos años o hasta que culmine el término de la presente Junta de Directores. Apéndice, pág. 302.
Sin embargo, la Junta de Directores mantuvo su pos-tura de no aceptar el retiro de la renuncia del señor Crespo Claudio y nombró a un Director Ejecutivo Interino. A raíz de ello, la Asamblea de Delegados le notificó a la Junta de Directores el inicio de una acción disciplinaria en res-puesta al desacuerdo.
La Junta de Directores, en atención a lo anterior, pre-sentó una demanda de interdicto preliminar, permanente y sentencia declaratoria contra la Asamblea de Delegados, su Presidente, el señor Cruz Reyes y el señor Crespo Claudio. En ella, solicitó que se ordenara al señor Crespo Claudio cumplir con la determinación de la Junta de Direc-tores para que se acogiera a una licencia de vacaciones hasta el 30 de junio de 2009 y que se abstuviera de destruir o remover de las instalaciones de la AEELA cualquier do-cumento o propiedad de la Asociación. Además, pidió que se determinara que el poder de nominar al Director Ejecu-tivo residía en la Junta de Directores, por lo que la Asam-blea de Delegados no podía intervenir en ese proceso. De igual forma, solicitó que se ordenara a la Asamblea de De-legados, su Directiva y componentes a que se abstuvieran de intervenir con los poderes y las prerrogativas de la Junta de Directores. Por último, pidió la paralización de todo procedimiento disciplinario iniciado por la Asamblea de Delegados en contra de los miembros de la Junta de Directores por hechos relacionados a este caso.
Luego de varios trámites procesales, el Tribunal de Pri-mera Instancia celebró la vista de interdicto permanente. *1001 En ese momento, la controversia se limitó a establecer si hubo una renuncia válida por parte del señor Crespo Claudio. Luego de sopesar la prueba documental y testifical, el Tribunal de Primera Instancia emitió una sentencia en la que declaró “con lugar” el interdicto permanente que se solicitó. Cimentó su decisión en que el poder de nominar al Director Ejecutivo se delegó mediante legislación a la Junta de Directores. Por consiguiente, la Asamblea de De-legados no podía intervenir con cualquier determinación sobre ese asunto ni podía disciplinar a los miembros de la Junta de Directores por ello.
De igual forma, el foro primario resolvió que la carta suscrita por el señor Crespo Claudio, en la que recoge su decisión de acogerse a la jubilación, constituyó una notifi-cación de renuncia. El Tribunal de Primera Instancia pun-tualizó que concluir que la misiva en cuestión era un simple aviso de su intención de jubilarse carecía de mérito porque el lenguaje utilizado era determinante e inequívoco al indicar que “me acogeré a los beneficios de la jubilación efectivo el 30 de junio”.
En desacuerdo con el dictamen del foro primario, el se-ñor Crespo Claudio apeló ante el Tribunal de Apelaciones. En su escrito, indicó que el foro primario erró al declarar “con lugar” el injunction permanente. También, señaló que el foro primario erró al no reconocer que la Asamblea de Delegados tenía la facultad de gobernar y supervisar las actuaciones de la Junta de Directores.
Luego de evaluar los argumentos de las partes, el foro apelativo intermedio dictó una sentencia que modificó y confirmó el dictamen del foro primario. En esencia, el Tribunal de Apelaciones determinó que el señor Crespo Claudio renunció a su puesto como Director Ejecutivo, por lo que no procedía hablar de una violación al debido proceso de ley. Además, ese tribunal confirmó la emisión del inter-dicto permanente contra la Asamblea de Delegados. Sin embargo, sostuvo que la Asamblea de Delegados ostentaba *1002 el poder de disciplinar y destituir a los miembros de la Junta de Directores, conforme a la norma establecida en Domenech, Tesorero v. Corte, 48 D.P.R. 542, 547 (1935), según la cual, quien está facultado para nombrar, también lo está para destituir. Ahora bien, el foro apelativo interme-dio indicó que el motivo de disciplinar a la Junta de Direc-tores no podía estar relacionado con el ejercicio de las pre-rrogativas que fueron delegadas exclusivamente por ley a ese cuerpo directivo.
Inconforme con ese dictamen, la Junta de Directores re-currió ante este Foro mediante una petición de certiorari. La Asamblea de Delegados no recurrió de la sentencia del Tribunal de Apelaciones. En su escrito, la Junta de Direc-tores aduce que el Tribunal de Apelaciones erró al concluir que la Asamblea de Delegados podía disciplinarla conforme lo resuelto en Domenech, Tesorero v. Corte, id. En oposición, la Asamblea de Delegados presentó su alegato y sostuvo que la determinación del Tribunal de Apelaciones era correcta en todos sus aspectos.
El 13 de mayo de 2010 expedimos el auto de certiorari. El 22 de julio de 2011 la Asamblea Legislativa aprobó la Ley Núm. 144-2011. Esa ley enmendó significativamente la Ley Núm. 133 de 28 de junio de 1966, conocida como Ley de la Asociación de Empleados del Estado Libre Asociado de Puerto Rico, 3 L.P.R.A. see. 862 et seq.
Con posterioridad a esos sucesos, el 12 de agosto de 2011 la Junta de Directores presentó ante este Tribunal una “Moción sobre academicidad por enmiendas a la ley orgánica de la Asociación de Empleados y otros extremos”. En esa moción, a la cual no se opuso la parte recurrida, la parte peticionaria afirmó que el caso se convirtió en acadé-mico por dos fundamentos.
En primer lugar, la parte peticionaria señala que la con-figuración de la Junta de Directores y de la Asamblea de Delegados que existía cuando el Tribunal de Primera Ins-tancia emitió el injunction permanente, la sentencia del *1003 Tribunal de Apelaciones y la solicitud de certiorari ante este Foro no es igual. Es decir, indica que la situación tác-tica no es la misma que existía cuando expedimos el auto de certiorari el 13 de mayo de 2010. Así pues, concluye que no existe adversidad real entre las partes que requiera nuestra atención.
En segundo lugar, la parte peticionaria aduce que me-diante la Ley Núm. 144-2011 se enmendó extensamente la Ley Núm. 133, supra. En particular, el Art. 3 de la Ley Núm. 144, supra, establece en lo que nos concierne:
Los directores servirán hasta la expiración de sus respecti-vos términos y hasta que se elijan sus sustitutos. Sin embargo, los directores quedarán automáticamente separados del cargo que ocupan por alguna de las siguientes razones:
(1) Cesar por cualquier razón como empleado en la agencia gubernamental cuyos empleados representa ante la Asamblea de Delegados.
(2) Renuncia.
(3) Haber sido declarado culpable por un tribunal compe-tente de cualquier delito grave.
(4) Haber sido declarado incapacitado para regir sus bienes o persona.
Los directores podrán ser separados de los puestos a los que fueron electos en la Junta de Directores solo por justa causa, entendiendo que será justa causa una o más de las siguientes causales:
(1) Utilizar las facultades propias del cargo de Director en beneficio propio o de algún familiar dentro del tercer grado de consanguinidad o segundo de afinidad.
(2) Defraudar o ayudar a defraudar a la Asociación.
(3) Revelar información confidencial sobre los negocios o asuntos internos de la Asociación para favorecer a otras per-sonas naturales o jurídicas.
No constituirá justa causa para la separación de los cargos las meras discrepancias entre los cuerpos directivos en cuanto al ejercicio de las facultades, prerrogativas y responsabilida-des que le han sido conferidos por [esta Ley] a sus miembros. La Asamblea de Delegados no podrá intervenir, revocar ni in-terferir de forma alguna con las acciones que en ejercicio de las facultades y poderes lleve a cabo la Junta de Directores. La Asamblea de Delegados, ni la Junta de Directores tendrán per-sonalidad ni capacidad jurídica separada a la de la Asociación. Tanto los miembros de la Asamblea de Delegados, *1004 así como los de la Junta de Directores no podrán iniciar accio-nes derivativas contra la Asociación ni un cuerpo rector contra otro a menos que sean indebidamente privados de ejercer sus facultades, derechos u obligaciones.
El miembro a ser destituido deberá garantizársele un de-bido proceso de Ley por sus pares que lo eligieron. Estos serán los que en primera instancia determinen sobre cualquier que-rella de destitución de su cargo como miembros de la Junta de Directores. Una decisión sobre destitución deberá ser presen-tada ante la Asamblea de Delegados convocada en asamblea extraordinaria la cual tendrá que ser aprobada por dos terce-ras partes de los miembros delegados en Asamblea Extraordinaria. Este miembro delegado quedará fuera de la Asamblea de Delegados una vez sea aprobada su destitución de la Junta de Directores y continuará el suplente. La Junta de Directores establecerá un procedimiento mediante Regla-mento para atender dicha destitución. (Enfasis nuestro). 3 L.P.R.A. sec. 862d.
II
A. Mencionamos recientemente en Asoc. Fotoperiodistas v. Rivera Schatz, 180 D.P.R. 920, 933 (2011), que “un caso se convierte en académico cuando con el paso del tiempo su condición de controversia viva y presente se ha perdido”. Como es conocido, un pleito resulta académico si “se trata de obtener un fallo sobre una controversia disfra-zada, que en realidad no existe ...”. San Gerónimo Caribe Project v. A.R.Pe., 174 D.P.R. 640, 652 (2008). Véanse, además, Moreno v. Pres. U.PR. II, 178 D.P.R. 969, 973 (2010); hozada Tirado et al. v. Testigos Jehová, 177 D.P.R. 893, 908 (2010).
Asimismo, puntualizamos en Moreno v. Pres. U.P.R. II, supra, pág. 973, que una “controversia abstracta, ausente un perjuicio o amenaza real y vigente a los derechos de la parte que los reclama, no presenta el caso y controversia que la Constitución exige para que los tribunales puedan intervenir”.
Ahora bien, existen varias excepciones a la doctrina de *1005 academicidad. Estas operan cuando se plantea ante el tribunal (1) una cuestión recurrente o susceptible de volver a ocurrir; (2) cuando el demandado ha cambiado la situación de hechos, pero no tiene visos de permanencia o (3) cuando subsisten consecuencias colaterales que tienen vigencia y actualidad. Torres Santiago v. Depto. Justicia, 181 D.P.R. 969, 983 (2011).
De esa forma, cuando “se determina que un pleito es académico y que no está presente ninguna de las excepciones que evadirían su academicidad, es deber de los tribunales desestimarlo”. Asoc. Fotoperiodistas v. Rivera Schatz, supra, pág. 936. El poder judicial no tiene discreción para hacer lo contrario. Moreno v. Pres. U.P.R. II, supra, pág. 975. Véase, además, Alvarez v. Smith, 558 U.S. 87 (2009).
B. En este caso, es correcta la postura de la peticiona-ria Junta de Directores. El recurso se tornó académico. Ad-viértase que la composición de la Junta de Directores y de la Asamblea de Delegados de la Asociación ya no es la misma. Ese cambio en los hechos del caso ha desembocado en que no exista posibilidad de una acción disciplinaria por parte de la Asamblea de Delegados hacia la Junta de Directores, al punto que tenemos ante nos una moción por academicidad de la propia Junta de Directores, a la cual se allanó la Asamblea. Cualquier expresión nuestra acerca de esa controversia —que ya no está viva— sería emitir una opinión consultiva. E.L.A. v. Aguayo, supra. Dicho de otro modo, ya no se encuentran presentes ni la asamblea que quería destituir ni la junta que no quiso aceptar la renun-cia del Sr. Pablo Crespo Claudio. Además, la Asamblea Le-gislativa clarificó palmariamente la resolución de futuras controversias similares. Con ello, se disipa la posibilidad de que este caso sea susceptible de repetirse. Torres Santiago v. Depto. Justicia, supra, pág. 983.
En específico, con la aprobación de la Ley Núm. 144, supra, es claro que los miembros de la Junta de Directores servirán hasta la expiración de su término y hasta que se *1006 elijan sus sustitutos. Incluso, se indica que las meras dis-crepancias entre la Asamblea de Delegados y la Junta de Directores en cuanto al ejercicio de sus facultades, prerro-gativas y responsabilidades no constituirán justa causa para que la Asamblea de Delegados discipline a la Junta de Directores. Art. 3 de la Ley Núm. 144, id.
Asimismo, el extenso Art. 3, id., indica que la Asamblea de Delegados no podrá intervenir con las acciones que la Junta de Directores lleve a cabo en el ejercicio de sus fa-cultades y deberes. De igual forma, el artículo en cuestión esboza que la Asamblea de Delegados y la Junta de Direc-tores no tendrán personalidad ni capacidad jurídica sepa-rada a la de la Asociación de Empleados. Id. Además, la Ley Núm. 144, id., prohíbe la presentación de acciones de-rivativas de la Asamblea de Delegados contra la Junta de Directores, a menos que se les prive indebidamente de ejer-cer sus facultades, derechos u obligaciones.
Recordemos que en los foros inferiores la controversia se limitó a determinar si procedía una acción disciplinaria en contra de la Junta de Directores por no acatar el criterio de la Asamblea de Delegados. Así las cosas, el alcance de nuestro pronunciamiento sobre academicidad se limita a eso. No tenemos que resolver si proceden otras acciones legales en contra de la Junta de Directores. Entrar en esa discusión constituiría obiter dictum.
Valga recalcar que la parte recurrida no se opuso a la moción de academicidad que presentó la parte peticionaria. Así pues, resulta forzoso concluir que el cam-bio en la composición de los cuerpos rectores de la AEELA y la nueva legislación transforman este caso en académico. “La Constitución no nos faculta para embarcarnos ahora en un análisis abstracto de estos asuntos”. Moreno v. Pres. U.P.R. II, supra, pág. 977.
*1007 III
Por los fundamentos que preceden, se deja sin efecto el “injunction”permanente que emitió el Tribunal de Primera Instancia y que confirmó el Tribunal de Apelaciones. Ade-más, se desestima la demanda por haberse tornado acadé-mica la controversia.
Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal Supremo. La Jueza Asociada Señora Fiol Matta y la Juez Asociada Señora Rodríguez Rodríguez disintieron sin opinión escrita. El Juez Asociado Señor Rivera García emi-tió un voto de inhibición.
(Fdo.) Aida Ileana Oquendo Graulau

Secretaria del Tribunal Supremo

— O —
Voto de inhibición emitido por el
Juez Asociado Señor Rivera García.
El Juez suscribiente fungió como Juez del Tribunal de Apelaciones durante el periodo de abril de 2009 a septiem-bre de 2010. Allí participamos directamente en el recurso de referencia, emitiendo la sentencia que hoy se revisa. La controversia giraba en torno a las facultades de la Asam-blea de Delegados de la Asociación de Empleados del Es-tado Libre Asociado de Puerto Rico([1]) (la Asamblea) y la Junta de Directores de dicha entidad. Resolvimos en aquel entonces que el foro de instancia no erró al declarar “ha lugar” una solicitud de interdicto permanente que se pre-sentó en contra de la Asamblea. Por otra parte, modifica-mos el dictamen apelado a los fines de establecer que, en virtud de su facultad de nombramiento, esa parte tenía la *1008 autoridad de disciplinar y destituir a los miembros de la Junta de Directores. Lo anterior siempre y cuando el ejer-cicio de dicha facultad no interfiera con las prerrogativas que se le hubiesen delegado mediante ley a esta última.
Es por todos conocido que tanto la Regla 63 de Procedi-miento Civil, 32 L.P.R.A. Ap. V, así como los Cánones de Ética Judicial, exigen que el juez no incurra en conductas que denoten o arrojen dudas en cuanto su parcialidad para adjudicar o que tiendan a minar la confianza pública en el sistema de justicia. Este criterio de imparcialidad es de gran transcendencia en nuestro ordenamiento jurídico, toda vez que reafirma la confianza de los ciudadanos en nuestro sistema adjudicativo y, además, ayuda a mantener bases democráticas sólidas.
En vista de lo antes señalado, y atendiendo a los man-damientos éticos que rigen nuestro quehacer jurídico, nos inhibimos de pasar juicio sobre los méritos del presente caso.

(1) Hoy Asociación de Empleados de Gobierno de Puerto Rico.